OPINION
"Good Fences Make Good Neighbors"[1]
If Robert Frost is correct, the split rail wooden fence dividing the abutting rear yards of David Orleck and Michael Fitz must have been the worst fence in the world.
It was the Fitz's fence and "it came with the house" (Tr. 59), but by actual measurement made by a surveyor, part of the fence was on the Orleck's property. Bad blood developed between the Orlecks and the Fitzs over the fence which ultimately culminated in a ruckus between them and neighbors who were visiting the Fitzs on August 4, 2000. The police were called and after an investigation, David Orleck was arrested and charged with two counts of menacing and one count of criminal damaging. Orleck waived his right to a jury and after a bench trial, the court found him guilty on the two counts of menacing, but not guilty as to the criminal damaging charge. The menacing charges are fourth degree misdemeanors, and the court sentenced Orleck from the bench with the maximum sentence of thirty days in jail for each conviction to be served concurrently, and a fine of $100 in court costs for each conviction. This appeal followed. The execution of the sentences were stayed pending appeal.
Orleck presents us with the following four assignments of error:
 1. THE TRIAL COURT ERRED IN ITS CONVICTION OF DEFENDANT-APPELLANT FOR MENACING JEREMY BYRD.
 2. THE TRIAL COURT ERRED IN ITS CONVICTION OF DEFENDANT-APPELLANT FOR MENACING TERESA FITZ.
 3. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY FAILING TO CONSIDER THE REQUIREMENTS OF OHIO REVISED CODE SECTION 2929.22.
 4. THE PROSECUTOR'S CLOSING STATEMENT CONSTITUTED REVERSIBLE ERROR FOR MISCONDUCT.
We will treat the first two assignments of error together. Jeremy Byrd was a neighbor, who together with his family, was visiting the Fitzs for a back yard barbecue on that day. (Teresa Fitz is the wife of Michael Fitz). We have carefully read the record, including the 173-page transcript of the hearing, and conclude that there is evidence beyond a reasonable doubt that Orleck menaced both the victims.
The incident began when Orleck tore down that part of the fence he believed to be on his property. The testimony by both Jeremy Byrd and his wife, Jill Byrd, together with that of Michael Fitz, is consistent and is sufficient to convince the trial court beyond a reasonable doubt that David Orleck completely "lost it" that afternoon. He ranted and raved at the Byrds and the Fitzs and made clear threats of physical harm and even threatened to kill the victims (Tr. 27), as well as the Byrds' baby who was present. The Orlecks' son even came out with a dog on a leash and ordered the dog to "sic him," aiming the dog at Fitz, who approached the fence and grabbed the dog's leash in defense. Both victims testified that they began to fear for their own safety and that of their four-month old baby. (Tr. 30, 46). The fracas escalated to the point where Orleck picked up one of the split rail logs lying on the ground and threatened Fitz with it, holding it like a baseball bat. (Tr. 31). Fitz picked up another rail and held it in a defensive position, but then eventually both men calmed down and put their logs down without doing harm to either one. (Tr. 31). At that point, the police were called.
David Orleck's account of the incident is radically different from that of the Byrds and the Fitzs. He testified that the whole thing started when Michael Fitz started making derogatory comments about Orleck's son who was at that point running in Orleck's backyard. He denied using any profanity or threats of bodily harm to anybody, and he claimed that he only walked up to Fitz and said something to the effect that: "Mike you are a really big man, talking to a child like that." (Tr. 100). He further testified that Mike Fitz picked up his sixty-five pound dog and held it off the ground while he used his other hand to grab Orleck's seventeen-year old son and immobilize him.
At the end of the trial, the court stated from the bench: "The Court has listened to the evidence and abjudged [sic] the credibility of the witnesses and I have taken some notes and I'm sure I have made some decisions as to credibility. I think the credibility in this case really falls short on the terms of the defendant's case." (Tr. 171).
As we have stated many times, credibility is for the trier of the facts. See, e.g., City of Dayton v. Versic (Mar. 15, 1996), Montgomery App. No. 15223, unreported. Here again is another classic case of the trial judge being forced to choose between two conflicting sets of testimony. We will not disturb the choice made by the trier of the fact between witnesses and their conflicting testimonies unless it is so incredible that it defies belief. Fairborn v. Boles (May 15, 1998), Greene App. No. 97 CA 110, unreported. The Ohio Supreme Court has held that "where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Meyers v. Garson (1993), 66 Ohio St.3d 610, 614. The trial court clearly found the testimony of both the Fitzs and the Byrds credible and provided clear and convincing evidence that the physical and abusive fracas started with David Orleck as the aggressor, and the court properly found him guilty of both counts of menacing. The first two assignments of error are overruled.
In his third assignment of error, Orleck argues that the trial court failed to consider the factors set forth for sentencing in misdemeanors in R.C. 2929.22. The record is silent whether the court did consider the statutory criteria or even discussed it, but a silent record raises the presumption that the court correctly considered the appropriate sentencing criteria. State v. Adams (1988), 37 Ohio St.3d 295, syllabus 3. See also State v. Cole (1982), 8 Ohio App.3d 416.
Orleck contends that the court erred by imposing both a jail sentence and a fine in derogation of R.C. 2929.22(E). However, that subsection allows the imposition of both the fine and imprisonment when, inter alia, "the offense has proximately resulted in physical harm to the . . . property of another . . ." There is no doubt that Orleck tore down part of the Fitzs' fence even though part of it was on Orleck's property. The third assignment of error is overruled.
In his final assignment of error, Orleck argues that the prosecutor committed reversible error in his closing argument referring to the people in the case as "sick" in rendering his personal opinion as to some of the evidence in the case. Orleck's counsel failed to object to any part of the prosecutor's remarks and, therefore, any objection is waived except for plain error. We do not find the few questionable remarks by the prosecutor were sufficient to prejudice the outcome of the trial so that the outcome would have been clearly different but for these errors. State v. Waddell (1996), 75 Ohio St.3d 163, 166. The court made this determination and judgment based upon the credibility of the witnesses. We do not see in the record any evidence that any statements by the prosecutor in closing affected the trial court's credibility call. The fourth assignment of error is overruled, and the judgment is affirmed.
WOLFF, P.J. and FAIN, J., concur.
[1] Mending Wall by Robert Frost.